Thank you, Your Honor. Michael Houchin on behalf of the plaintiff and the appellate. Sorry, I lost my video there. There we go. May it please the court, this is a consumer class action regarding Trader Joe's branded fresh packaged chicken products. The plaintiff here alleges that defendant's front label statement that the products contain a maximum of 5% retained water is false and misleading and a violation of California's consumer protection laws. Plaintiff's complaint alleges that the products were tested by a food laboratory and the laboratory found that the products did not contain... Counsel, can I... So this retained water thing, you know, obviously that's the key issue here. You know, I don't know much about this retained water issue. Is retained water something like, like you say, temperature? It sort of only has one, you know, like you're either right or wrong about, you know, if I say it's 14 degrees Celsius outside, right? I'm either right or wrong, right? There's not any sort of different types of temperature. There's not your temperature or my temperature. But I'm trying to figure out, is retained water sort of this thing that's like humidity or something that's like a... Or is retained water kind of depend upon the process by which you measure it? Your Honor, retained water has a specific regulatory meaning. It refers to water that's picked up by poultry during the post evisceration process. Well, the challenge with that, Counsel, is that, as I understand it, reading the regulations that under 9 CFR 44.1.1, I think, or 10, if it was like temperature, then I don't know why the regulatory agency would require entities to submit their protocols, right? You don't tell people to submit their protocol on how they take the temperature. You just ask them, like, is it, you know, tell me the temperature. And so I understand it's regulated, but it's actually regulated by saying, tell us the protocol you're going to use. And we will have the opportunity to tell you, you can or can't use it. So I really do want to know the answer is, can there be different, you know, if I... Are there different ways to measure how much retained water is in something? That's a good question, Your Honor. I believe it is more akin to temperature. It's a certain percentage, and I believe there is different ways to measure retained water, and you're correct. Related to that, maybe I can ask it just a different way. Are there, how many different protocols for testing retained water are there? Is there just one protocol, or are there multiple protocols? I don't know the answer to that question. I assume that there would be one protocol that the manufacturer would have for testing. It's kind of a critical, it's kind of the critical question, I feel like, in this case. Because I can't tell whether or not you are saying you used, your client's testing facilities used exactly the same protocol. Or whether or not they may have used a different protocol. I mean, let me ask you this. Can you, subject to your Rule 11, you know, obligations. Can you tell us that, yes, they used exactly the same protocol that Trader Joe's uses and submitted to the agency? We haven't reviewed Trader Joe's retained water protocol. We never got into the discovery phase of this case, because the case was dismissed early on on a motion for judgment on the pleadings. So you don't know whether, so just to be clear, you don't know whether or not you're using this, the same retained water protocol that Trader Joe's is using? That's correct. But I think that the complaint alleges that since we did food laboratory testing and that the testing shows that there's more retained water that was on the label. I think that's plausible that, you know, Trader Joe's was not, that their protocol is somehow faulty or they're not, they didn't, you know, submit the right data. So we'd like to get into that in the discovery. Yeah, I know you do. And then, presumably, the discovery could tell you and you could run. But that's, I mean, I think the case law is kind of clear that you can't have a fishing expedition for something like that. Unless, what I'm trying to figure out is, is your claim, well, first of all, let me ask, is Trader Joe's retained water protocol that they presumably submitted to the agency, is that public or something? Is that something that we could all go see or somebody can get from the agency? Or is that something that you could only get through discovery? I believe it's something that we could only get through discovery. It's my understanding that sometimes these retained water protocols are submitted confidentially. I don't believe that we'd have a way to access it just by, you know, doing a Google search on the Internet. How about an FOIA request to the agency? Would you do that? Yes, that's definitely a possibility. You know, there'd be a chance that the agency might object based on, you know, confidentiality concerns that Trader Joe's has. But that would definitely be an option. Well, the difficulty I'm having is you've got some testing agencies that have some protocol, presumably. I mean, I've got to imagine that protocol matters, or why in the world does the agency have a whole section of the regulations that are about protocol, right? And so, I've got to imagine protocol matters. And so, you have some, you're testing entities, you follow some protocol. But it sounds like you can't tell us that that protocol is the same one that Trader Joe's did. So, how do we know, or how does anybody know at this point whether or not the protocol is what makes the difference? You know, your protocol that you follow gives you 10%, and their protocol gives them 5%. Yeah, I think that's correct. But at the motion for judgment on the pleading stage, all reasonable inferences are supposed to be drawn in favor of the plaintiff. But their protocol has been, I guess that takes us to the law then. Their protocol has been accepted by the agency. And so, at the end of the day, if it turned out that the difference that you're getting is because of the protocol, right? If that's the difference, then since their protocol has been accepted by the agency, the only way you could win is if we were to say, well, California law allows, also requires what your protocol, also requires that they not list a number that's higher than what your protocol comes out. But that would, wouldn't you agree that's preemptive? Not necessarily, Your Honor. I think that there's, you know, the laboratory testing and, you know, the retained water protocol that they use. Both could be shown to prove that the product actually contains more than 5% of retained water, which is exactly what would be alleged in the complaint. Depending on 5%, more than 5% retained water under a certain protocol, I think is what you're saying. You know, it would have more than 5%. Your protocol, assuming you're not, you're being honest, which I assume you're honest, your client is honest, that their protocol obviously has a number higher than 5%. I assume that's correct. But if we don't know it's the same protocol, then doesn't your claim sort of devolve to the fact that your protocol should be what Trader Joe's is following, not the protocol that they've submitted and that the agency accepted? I wouldn't necessarily agree with that. I think that, you know, the agency doesn't review the retained water protocol. It doesn't analyze any of the data. All they're required to do is submit it to the agency. The agency never actually approved the protocol. And the regulations require that they make statements that are not false and misleading. And so I think with our testing we can show that. Also, it says in 9 CFR 441.10a that you can't have any retained water. A regulated entity like Trader Joe's here can't have any retained water, quote, unless the establishment preparing those carcasses and parts demonstrates to FSIS with data collected in accordance with a written protocol that any retained water is an unavoidable consequence. So it says that they have to demonstrate to FSIS. Now, I get your point that it may be that the way they demonstrate it is they send it in and the regulatory guy at FSIS throws it in the circular file. I don't know what they do with it. But that's what the federal regulation says is that they have to demonstrate it to FSIS. That's correct. And so they do have to submit the protocol, but, you know, there's nothing in the regulations that say that the FSIS actually reviews the protocol or the underlying data for the protocol or the retained water limit. So where did the district court go wrong from your perspective? We think that the district court went wrong by basically speculating that the FSIS approved the labeling statement at issue. Specifically, the district court says the FSIS or the defendant must have included a report of its retained water data to the FSIS in evaluation of its results. And then in turn, the district court reasoned that the FSIS must have reviewed this data and approved the product's label in order to permit defendant to place its retained water claim upon its products for sale in interstate commerce. We think that's just speculation and something that's, you know, not alleged in the complaint. And it's contrary to what the regulations say. 66FR1755 says that generically approved labels may be used without being submitted to the agency for approval, provided that they show all mandatory features. And 66FR1755 specifically states that the FSIS will not pre-approve either the data or the water retention limits the data are reported to justify. I see you focus on the label. And I get your point on the label. And Brader Joe's focuses on the regulatory provision I've been talking about, which is the retained water protocol provision. And I hear your point that if you read this entire provision on retained water, we could have sort of an academic argument about whether or not the agency is approving the retained water protocol or whether they are just sort of accepting it. And then they obviously have the authority to disapprove it, right? So it's more whether they take affirmative action or whether they don't. But the challenge, I guess, I think the challenge is, assuming it's the latter, which is the way I read it, that they don't necessarily approve it. They don't send a letter necessarily approving. They just reserve for themselves the ability to disapprove it within 30 days. If your lawsuit went forward and the court was to conclude that, yes, you've got a claim under California law and that Trader Joe's is liable, wouldn't you be kind of adding something on top of what the regulatory regime, which basically just says all that a company like Trader Joe's has to do is send in their protocol, send in their data, and we reserve the right to basically disapprove it? You'd be adding sort of an affirmative thing on top of that, that they also have to meet your testing protocol, too. I don't think that's necessarily correct, Your Honor. Since the FSIS does not review the data or actually approve the statements, poultry manufacturers have to ensure that the statements are not false and misleading. And so I think this case is really akin to the Bates v. Dow AgroSciences LLC case by the Supreme Court. There they held that claims under the FIFRA statute were not preempted, and I think the circumstances are pretty similar here. In the Bates case, the manufacturer of the pesticide issue had to conditionally register the pesticide with the EPA, but the EPA never passed on the accuracy of the statements on their label. They never actually reviewed the label for safety or efficacy. And so the generic approval process in this case with respect to retained water statements is very similar to the process that was used in the Bates case because in this case, the FSIS doesn't review or approve it, and that's exactly what happened in the Bates case as well. And specifically with respect to our claim for breach of express warranty, the Bates case got into that as well and said that a cause of action on an express warranty only asks that the manufacturer make good on the contractual commitment that it voluntarily undertook by placing that warranty on its product. And that's exactly what we're alleging here. A defendant is free to choose the retained water percentage, but it has to be true and not false and misleading. And so our allegations that they put the 5% retained water, we think that's completely consistent and it's not preempted. Okay, let's hear from Trader Joe's. Thank you, Your Honor. Good morning. May it please the court. I'm Hal Gargantha for Trader Joe's. I think the appellant's problem is that they misunderstand the regulatory structure in several respects. Let me start first with the claim that the labels themselves, the poultry labels, are not reviewed and pre-approved by the FSIS. They're not subject to the generic approval process that counsel is talking about because they contain special statements, at least three of them. No antibiotics, no hormones, and vegetarian fed. The law is very clear and we've cited those cases that when those special statements are present, everything on the label is reviewed by the FSIS to make sure that the labels are not false and misleading and that they are pre-approved. So on that ground alone, these claims are preempted because those retained water statements are part of that pre-approval process. It's known as the sketch approval process. Now, it is true that in the preamble to the retained water rule, the FSIS says that retained water statements may be generically approved, but it says nothing about not reviewing them when they are part of a label that has special statements. And in fact, in the Lavinia case from the Southern District of New York, which we cited to the court in our brief, the Second Circuit asked the FSIS to submit an amicus brief in a very similar case. Lavinia involved canned chicken products and the dispute was whether there was so much water content in those Costco canned chicken products that Costco should have said something more on the labels, should have referred to the water in the name of the product. And what both the District Court and the Second Circuit and the FSIS stated was that first, those labels were subject to sketch approval. Everything was reviewed, including the water content. Number two, that the plaintiffs were attempting to test the water content by their own methodology, which was at odds with the regulatory methodology that the FSIS applied. Can I ask you some of the questions that I asked the plaintiff's counsel about, which is, I'm just trying to make sure, is there only one sort of methodology to test for retained water or are there different protocols a person can use? There could be any number of methodologies depending on the processing facilities. In fact, the point of the retained water rule is to give manufacturers flexibility and account for the variability in the different processes that are used by poultry processors. Is the amicus protocol public or not? I asked that question. I don't believe it is, Your Honor. It's submitted to the FSIS. I suppose it might be obtained through a FOIA request, but the point is, the whole retained water process is designed to give manufacturers flexibility and to account for the variability in processing of chicken to ensure that it's safe, basically. That's why it's dipped in water, that's why it's chilled, essentially, so you don't get salmonella. That's a very similar kind of flexibility. If the court looks at the Jones v. Rath packing case from the Supreme Court, where the Supreme Court found preempted a California rule that was stricter, that allowed for less variability than the FSIS's rule. This was under the Federal Meat Inspection Act. The court said this is preempted for two reasons. First of all, because it contradicted the federal regulation. Secondly, because the act, the FMIA, similarly to the Poultry Products Inspection Act here, reserves the enforcement of that rule to the agency, not the private plaintiffs. We have a situation here where the plaintiff is essentially trying to second-guess a considered decision by a federal agency acting pursuant to statute to give a certain amount of leeway to processors. It's coming up in contrast to a protocol that is designed to test at the processing facility subject to FSIS acceptance or rejection. It wants to replace it with a protocol, an unknown methodology, by a third party on products bought at the supermarket. That's very similar to what they were trying to do in Levine. It's similar to what the Supreme Court found preempted in Rath v. Jones packing. One could look at any number of other cases in the Supreme Court, which we cite. Medtronic 2 is another example of plaintiffs trying to enforce a federal regulation that is given to the agency to enforce. Can I get back to your first point when you started talking about the label on the added language or the added text? Yes. I have the label right here in front of me. I'm just curious how this labeling process works that you started out describing to us. When I look at the label, as I'm looking at it on the left-hand side, there's a little circle that says, No Antibiotics Ever, All Vegetarian Fed. Then in the center, it says, Never Fed Animal By-Products, No Added Hormones. Then you drop down, and in black letters, it says, Minimally Processed and No Artificial Ingredients. Below that then says, Up to 5% Retained Water from Processing. Then it goes on to say, Perishable, Keep Refrigerated. So is it your point on this labeling argument that you made to start out with? Is it that information contained in the little circle is all that prompts FSIS to look at the whole, all the labels on them? So, yeah, and that's a good question, Your Honor, and it's one that's been examined in the case law and on which the FSIS itself has taken a position. If the court looks at 9 CFR 412.1c, that regulation provides that labels containing special statements and claims, like those three that you mentioned in the little circle, the No Antibiotics, No Hormones, and Vegetarian Fed, those are special statements, what the regulation refers to as special statements, and if a label contains those special statements, the entire label has to be submitted to the FSIS and pre-approved before use. Is that just that label, the little circle? No, the whole label. Does it also include, down below, the lettering in black, which says, Normally Processed. Is there something unique about Normally Processed, by the way? Pardon me, Your Honor? The language, Minimally, I'm sorry, Minimally Processed. Yes. Is there something, is that a term of art? You know, it's a term of art. There's been litigation about what's minimally processed. You know, your guess is as good as mine sometimes, Your Honor. I see these cases once in a while. You apparently deal with these regulations all the time in this process. Let me say this. In the context of poultry products, poultry products, like meat products, are a little bit different from other food products because in the case of poultry products and meat products, pre-approval means preemption. The law is very clear on that. We've cited numerous cases. And in the case of labels with special statements, the entire label is reviewed and pre-approved. And, you know, we've cited to the court at least, I think, a half dozen cases, even more on that point, including the Lavinia case, which was affirmed by the Second Circuit. There are actually many cases in other areas where the Supreme Court has said pre-approval means preemption, including Medtronic 2, including Jones v. Rathpacking. So that point is very clear. And the FSIS has made it clear itself in the amicus brief that it submitted in the Second Circuit in Lavinia, which is cited in our brief, that when you have a label with special statements, the whole label is reviewed. The Lavinia court said that. When they review the label and these statements, no antibiotics ever, what it says. Yes. What do they do? Do they look at the data? Your Honor, I'm not an expert on what precisely FSIS does, but they are charged with doing it by the statute and by the regulation. And they are charged with ensuring that poultry products are not labeled in a misleading way. And the statute also contains express preemption provisions that say plainness, private plainness in states cannot impose requirements that are additional. Your Honor knows preemption law. I've read a number of your opinions. So I'm not going to give a lecture on that to somebody who knows more than I do. But I'm just trying to understand the label. I was trying to put your initial argument in context. The whole label, Your Honor. The whole label. With the actual? Yes. The whole label. But in addition to the label, we have preemption here, not just because of the preapproval of the label. We also have preemption because of the retained water rule and because these claims would impose a way of measuring retained water that is different or additional to the protocol. I ask these questions because separate apart from the label, it seems to me that plaintiffs can be making two arguments. I hope your opposing counsel is listening because this is what I wanted. They could be making one of two arguments, or I guess maybe both. But one would be that they're not using the right protocol. And one would be that when you say whatever protocol, they don't know what protocol you're using because it's not public. But when you say 5% that you must not be using the right protocol because when we do a test, we're getting 15, right? That could be their claim. Their other claim, I suppose, could be we're using the same protocol. There's only one protocol, however you want to say it. And Trader Joe's is lying or something akin to lying about they're getting a different because we're getting a different number than them. Their thermometer is saying 42 degrees, and we're getting 48 degrees. And it's like temperature, right? So I'm trying to figure out which one of those or both that they are trying to claim here. The one being we don't care about their protocol because retained water is an objective thing, and they're just so wrong about that. The other one is that you're lying, and the reality is chickens rolling off the assembly line at wherever Trader Joe's gets its stuff made, and it's got 15%, and even using your protocol, and you're lying or something's not quite right. And I don't know which one of those claims they're making. May I? Both of those claims are preempted, as the district court found. The reason they're preempted is because in the first place, using the wrong protocol is imposing requirements in addition to or different from. All right, so not much time. I hear you on that one. Jump to the second one. Well, let me get to the second one. And the second one is if we're lying, that's a fraud on the agency theory arising out of a requirement of a federal regulation under this court's decision in Perez v. NIDAC, as well as in the Buckman case, as well as in Medtronic 2, that claim is preempted because all of these regulations, the enforcement of these federal regulations, is relegated to the federal agency by the act. There is no private right of action to enforce the actual regulation. And if that's what they're purporting to do in the second claim, that's also preempted. And finally, let me say there's also conflict preemption here, Your Honors. Again, take a look at Buckman. Take a look at Perez. This whole idea of testing these products after you buy them at the supermarket would stand the federal goal of uniformity and labeling and the federal labeling and enforcement schemes on their head. So we not only have express preemption here, Your Honors, in two ways. We also have conflict preemption. Okay. All right. Thank you. Can I just ask one more question? Yes, go ahead. It may have been what Pius was getting at. Reviewing the label under your sketch analysis, what does that mean? Do they test, for example, how much? Do they look at the label? Do they actually test, for example, let's pick antibiotics. Do they actually test to see whether it has antibiotics? Or does the Trader Joe's or whoever submits it take a chance that they might and they might get caught if they're not telling the truth? I just want to be clear. I mean, you may have answered it in response to Pius, but I just want to have it clear on my own. Yes. Thank you, Your Honor. Well, I'll tell you, if it has antibiotics and Trader Joe's is putting them in there, they're in big trouble because that's a violation of federal law in 20 different ways. I don't know exactly what the FSIS does. The FSIS says it does it. The regulation requires that they do it, and the regulation entrusts the agency, which is the expert agency that's supposed to ensure food safety in this country, in doing it. So the point is, because the statute says that and because the regulations say that, these kinds of claims are preempted. Now, I assume that they must do it, and that's why we say we use the word must and the court used the word must. The whole point of expressing conflict preemption is to avoid a contradiction and putting on top of a federal agency additional requirements that, you know, second-guessing by states and plaintiffs beyond the federal scheme, and that's exactly what the district court found and what shouldn't go forward here. I'm sorry that I don't know the details of how they test for antibiotics, but I'm sure they do. I just picked that out because it's one of the... Yeah, no, and there's also no hormones and, you know, I can tell you... I guess they can't test every chicken. Right, they can't test every chicken, but as a matter of food safety... If it's done, it must be done on some sort of a... Plants are inspected by the FSIS. So, I actually do know what they do because I know it from another case. That's not the answer to Judge Corman's question, right? Yeah. Okay. Anything else? Okay, we've let you go over your time. I'm sorry. That's okay. No, no, no, we've had a lot of questions for you. You've got a minute for rebuttal. I've got to hold you for your minute because it's getting late. Sure, Your Honor. I'd just like to discuss the sketch label statements. We're not counting... Counsel, I'm sorry. I know I've got a minute, but which one of the arguments are you making? Are you saying that they are lying, that their protocol is kicking out a different number than what they're saying on their label, or are you saying that this has this much retained water and it's more than what they're saying and we don't care about their protocol, or are you saying both? Your Honor, I think it's more akin to the first one. They do have to... So, if your thing is that they're lying, that their protocol must be kicking out a different number, what evidence do you have of that? You don't even know what their protocol is, so what evidence do you have that they're actually lying? Well, we have the laboratory testing, and I think a reasonable inference would show that since the laboratory testing is higher, they must not be complying with their protocol. We think that we should at least be granted leave to amend on that basis. Okay. All right. Thank you. Thank you, Counsel. We appreciate your arguments in this interesting case, and we will submit it for decision at this time. Let me just ask you... Thank you, Your Honors. Thank you. Before we hear the last case on the calendar, do my colleagues need a break? Yes, I need a break. Okay. Thank you, Your Honor. This will be five minutes. Yes.
judges: Paez, Korman, Vandyke